Filed 7/30/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| PEJMAN SABERIN,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>ALATION, INC.,<br><br>     Defendant and Respondent. | A174549<br><br>(San Mateo County<br>Super. Ct. No. 24-CIV-03399) |

The growth in remote work spurred by the pandemic is well-documented.  We now confront one of the many issues created by that growth:  When do California's employment laws protect remote workers who are terminated by employers with their "principal offices" in California?

Plaintiff Pejman Saberin arbitrated claims against his former employer, defendant Alation, Inc. (Alation).  He alleged, among other things, that Alation unlawfully terminated him based on an arrest that did not result in a conviction, in violation of the Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.)[1] section 12952 (Section 12952) and Labor Code section 432.7.

In deciding what law governed Saberin's claims, the arbitrator ruled that these California statutes could not be applied extraterritorially because Saberin had been working remotely from Utah and the decision to terminate

---

[1] All further statutory references are to the Government Code unless otherwise specified.

him was made in Illinois. The arbitrator issued an award in Alation's favor upon the parties' stipulation that they could not identify any non-California law allowing Saberin to pursue a cause of action for unlawful termination based upon an arrest without conviction.

Saberin then petitioned the trial court to vacate the arbitration award. He argued that the arbitrator's extraterritoriality analysis was not "specific" to Section 12952 or Labor Code section 432.7, and did not properly consider the termination decision's connections to California. The court denied the petition, finding no basis for vacating the award. Saberin now appeals the order denying his petition. We affirm because Saberin and his arrest had no connection to California and because there is insufficient evidence that Alation made the decision to terminate Saberin in California.

## I. BACKGROUND

### A. Complaint

Saberin filed a complaint against Alation in San Mateo County Superior Court that included causes of action for violation of Section 12952 and Labor Code section 432.7. Section 12952, subdivision (a)(3)(A) provides, subject to certain exceptions, that it is unlawful for an employer with five or more employees to consider an "[a]rrest not followed by conviction" "while conducting a conviction history background check in connection with any application for employment." And Labor Code section 432.7, subdivision (a)(1) states, in relevant part, that an employer "also shall not seek from any source whatsoever, or utilize, as a factor in determining any condition of employment including . . . termination, . . . any record of arrest or detention that did not result in conviction."

The complaint alleged in substance as follows: Saberin was an engineer employed by Alation, a data analysis and software corporation doing

2

business in California.  Saberin lived in Utah and worked remotely for Alation since September 2021.  Saberin was arrested in Florida while returning from a vacation in October 2023, and asked his sister to e-mail Alation for additional time off.  While the e-mail stated Saberin had been injured in an accident, Alation learned of his arrest from its own research.  After Saberin was released from detention on or around October 24, 2023, Alation informed him that his employment had been terminated.  The criminal case against Saberin was subsequently dismissed in March 2024.

The complaint asserted that Alation violated Section 12952 and Labor Code section 432.7 by considering Saberin's arrest (that did not result in a conviction) in the decision to terminate him.

B. Arbitration Proceedings

The parties stipulated to stay the court proceedings and resolve their dispute through binding arbitration.  Saberin had signed two employment documents with arbitration provisions:  an Offer of Employment (Offer) and a Proprietary Information and Inventions Assignment Agreement (Inventions Agreement).  The Offer did not contain any choice-of-law provision.  The Inventions Agreement included a general provision that the agreement was "governed by the laws of the State of California," as well as a specific clause in the arbitration provision that any and all claims "ARISING OUT OF, RELATING TO OR RESULTING FROM MY EMPLOYMENT WITH THE COMPANY OR THE TERMINATION OF MY EMPLOYMENT WITH THE COMPANY" would be subject to binding arbitration "PURSUANT TO CALIFORNIA LAW."

In the arbitration proceedings, the parties disagreed about what law governed Saberin's claims.  Alation filed a motion arguing California law could not be applied extraterritorially to Saberin's claims.  Citing *Ward v.*

3

*United Airlines, Inc.* (2020) 9 Cal.5th 732, 760 (*Ward*), Alation contended that the applicable test for extraterritoriality was whether Saberin's " 'principal place of work [was] in California.' " And Saberin failed this test because he worked remotely from his home in Utah during the two years before his termination.

In support, Alation submitted declarations from its Vice President of Global Customer Experience Daniel Rose and Senior Human Resources Business Partner Liz Laber. Rose declared that he learned Saberin was absent from work and discovered Saberin's arrest via a public records search. Rose further declared that he and Senior Vice President of Customer Solutions Christos Mousouris, with "input" from Laber, "decided" that Saberin should be terminated "because of his unapproved absence and his dishonesty in communicating the reasons for that absence." Rose and Mousouris were in Illinois when they made the decision, even though Mousouris normally worked from home in California at the time. Laber, who noted that Alation was "headquarter[ed]" in California, similarly declared that Rose and Mousouris made the decision to terminate Saberin with "input" from her. Laber performed her work from California at the time.

Saberin opposed the motion on two alternative grounds: either extraterritoriality need not be addressed given the choice-of-law provision in the Inventions Agreement, or California law applied extraterritorially to Saberin's claims. Citing cases like *Campbell v. Arco Marine, Inc.* (1996) 42 Cal.App.4th 1850 (*Campbell*), Saberin argued that the applicable test for extraterritoriality was whether the unlawful employer conduct occurred in California, and that the test was satisfied here because Laber was "involved" in the termination decision.

4

The arbitrator granted Alation's motion. As a preliminary matter, the arbitrator explained that the choice-of-law provision in the Inventions Agreement did not "ultimately aid" the analysis. Even if the provision applied to Saberin's claims, he still had to overcome California's presumption against extraterritoriality.

The arbitrator concluded that Saberin failed to meet this burden under either test advanced by the parties: Saberin had not worked in California during any relevant period and was terminated "by decision makers making that decision from a location outside of California." In concluding that the decision to terminate Saberin occurred outside of California, the arbitrator described Saberin's allegations as "overly general and non-specific." The fact that Laber provided "input" from California to the decision makers in Illinois who had terminated Saberin was a "tenuous thread" that did not "warrant application of California FEHA or . . . Labor Code." The arbitrator reasoned that applying California law to employees working exclusively from a foreign jurisdiction and employment decisions with no connection to California "would potentially lead to an absurd result not consistent with California's legitimate interests in protecting its citizens and others working within its borders."

The parties stipulated to entry of an arbitration award shortly thereafter. The stipulation provided that Saberin was "unable to identify any Utah, Federal or applicable non-California law that would allow [Saberin] to pursue a cause of action for unlawful termination based upon an arrest without conviction as alleged in this arbitration" and Alation was "not aware of any such law." The stipulation also recognized Saberin's desire to "promptly challenge" the arbitrator's order. Pursuant to this stipulation, the

5

arbitrator entered an award in favor of Alation "such that Claimant Pejman Saberin shall take nothing from Respondent Alation, Inc."

C. Petition to Vacate Arbitration Award

Saberin petitioned to vacate the arbitration award pursuant to Code of Civil Procedure section 1286.2. Subdivision (a)(4) of that section provides that a trial court must vacate an arbitration award if it determines the arbitrator "exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."

Saberin argued that the arbitrator exceeded his powers here in ruling that FEHA and the Labor Code did not apply to Saberin's claims. Among other things, Saberin contended that the arbitrator failed to conduct a "specific" extraterritoriality analysis of Section 12952 and Labor Code section 432.7, the "statutes relating to the use of a conviction without an arrest as the basis for denial of employment." Saberin also argued that the arbitrator erred in applying the test for extraterritoriality under *Campbell*. Saberin reasoned that Laber's "input" to the decision makers was enough to connect his allegedly unlawful termination to California.

The trial court denied the petition. It explained that the arbitrator had "considered the connections to California" and found them "insufficient to support the application of FEHA protections" to Saberin's claims. The court concluded: "That was a correct application of the standard in *Ward*, and [Saberin] has not demonstrated a violation of public policy or of a statutory right." Saberin timely appealed.

6

## II.  DISCUSSION

A.  Appealability

Before turning to the merits of Saberin's arguments on appeal, we reject Alation's two challenges to the appealability of the order denying the petition to vacate the arbitration award.

First, Alation contends that even if the arbitrator made a legal error in determining that FEHA and the Labor Code did not apply extraterritorially to Saberin's claims, that error could not justify vacating the award under Code of Civil Procedure section 1286.2, subdivision (a)(4).  We disagree.

" 'Because the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels, arbitral finality is a core component of the parties' agreement to submit to arbitration.' " (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916.)  To effectuate this intent for finality and because arbitrators are "not ordinarily constrained to decide according to the rule of law," the " 'merits of the controversy between the parties' " are typically not subject to judicial review.  (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11 (*Moncharsh*).)  "Thus, it is the general rule that, with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law." (*Ibid.*) But "there may be some limited and exceptional circumstances justifying judicial review of an arbitrator's decision," including when "granting finality to an arbitrator's decision would be inconsistent with the protection of a party's statutory rights." (*Id.* at p. 32.)

The California Supreme Court has recognized such judicial review in the context of FEHA claims subject to mandatory arbitration.  (*Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 677 (*Pearson*).) To ensure the vindication of rights under FEHA, enforced for the public

benefit and not waivable by agreement, judicial review must be " ' "sufficient to ensure the arbitrators comply with the requirements of the statute." ' " (*Pearson*, at p. 677.) In *Pearson*, our high court deemed such review appropriate where an arbitrator's legal error prevents employee plaintiffs from obtaining a hearing on the merits of their FEHA claims. (*Pearson*, at pp. 670, 680 [concluding arbitrator made clear legal error in determining plaintiff's claim was time-barred and trial court would not err in vacating award under Code of Civil Procedure section 1286.2, subdivision (a)(4)].)

Here, as in *Pearson*, the arbitrator's ruling deprived Saberin of a hearing on the merits of his FEHA and Labor Code claims.[2] Indeed, the parties stipulated to entry of an arbitration award after this ruling because they could not identify any non-California law that would allow Saberin to pursue a cause of action for unlawful termination based upon an arrest without conviction. Under these circumstances, we conclude that judicial review of the arbitrator's decision is justified. (*Moncharsh, supra*, 3 Cal.4th at p. 11.)

Alation does not offer any persuasive authority to the contrary. For example, it cites *SingerLewak LLP v. Gantman* (2015) 241 Cal.App.4th 610, 624, which involves the arbitration of a dispute over a noncompete agreement. The former partner of an accounting firm argued that he was

---

[2] For the purpose of reaching Saberin's arguments regarding Labor Code section 432.7, we assume, without deciding, that judicial review is similarly available to protect a party's rights under this statute and avoid deprivation of a hearing on the merits of the claim. (See *Doe v. Department of Motor Vehicles* (2024) 102 Cal.App.5th 1004, 1018 (*Doe*) [describing Labor Code section 432.7 protections]; *Garcia-Brower v. Premier Automotive Imports of CA, LLC* (2020) 55 Cal.App.5th 961, 972 (*Garcia-Brower*) ["Section 432.7, subdivision (a) was enacted to serve the important public policy of removing employment barriers for those who have committed crimes that have been expunged by the courts"].)

not subject to the agreement and it was not enforceable under California law. (*Id.* at p. 614.)  After the arbitrator determined otherwise, the former partner sought to vacate the award. (*Id.* at p. 615.)  The Court of Appeal concluded that judicial review was not appropriate because any legal error by the arbitrator did not deprive the former partner of a hearing on the merits of his claim. (*Id.* at p. 624.)  Not so here.

Alation also relies on cases that do not involve arbitration at all. (*Campbell*, *supra*, 42 Cal.App.4th at p. 1855 [addressing extraterritorial application of FEHA in state court action]; *Hill v. Workday, Inc.* (2025) 773 F.Supp.3d 779, 797 [addressing exterritorial application of FEHA in federal court action].)  Neither case supports Alation's position that the arbitrator's ruling cannot be subject to judicial review here.

Second, Alation argues that Saberin waived any challenge under Code of Civil Procedure section 1286.2, subdivision (a)(4) because he agreed to the arbitrator's resolution of the governing law dispute and failed to argue that a resolution against him would exceed the arbitrator's powers.  *Moncharsh* does not support this argument.  The former employee in that arbitration claimed that a provision of his employment agreement was illegal and violated public policy. (*Moncharsh*, *supra*, 3 Cal.4th at p. 7.)  The California Supreme Court explained that, consistent with the purpose of arbitration to finally decide a dispute between the parties, the claim of illegality would have been waived for any future judicial review if the employee had failed to raise it before the arbitrator. (*Id.* at p. 31.)

Nothing in *Moncharsh* suggests that a party waives any challenge to an award under Code of Civil Procedure section 1286.2, subdivision (a)(4) by simply agreeing to arbitrate a dispute.  On the contrary, it highlights the importance of the statutory provision in balancing the "risk to the parties of

9

an arbitrator's erroneous decision" with the benefits of arbitration. (*Moncharsh*, *supra*, 3 Cal.4th at p. 13.) Similarly, Alation's other authorities are not on point. (*Comerica Bank v. Howsam* (2012) 208 Cal.App.4th 790, 829 [defendants forfeited issue by withdrawing from arbitration]; *Cummings v. Future Nissan* (2005) 128 Cal.App.4th 321, 328 [plaintiff forfeited argument that arbitration clause was unconscionable by failing to raise it at arbitration].)

Nor are we persuaded that Saberin was required to make a specific objection during arbitration that a ruling against him on the governing law motion would exceed the arbitrator's powers. The California Supreme Court has explained that waiver promotes finality in arbitration and discourages "a level of 'procedural gamesmanship' that we have condemned as 'undermining the advantages of arbitration' " and wasting "arbitral and judicial time and resources." (*Moncharsh*, *supra*, 3 Cal.4th at p. 30.) But Saberin did present to the arbitrator his arguments that California law governed his claims. And he reiterated those arguments in his petition to vacate the award under Code of Civil Procedure section 1286.2, subdivision (a)(4), contending that the arbitrator "exceed[ed] his powers" in concluding otherwise. Alation does not explain how the lack of a specific Code of Civil Procedure section 1286.2, subdivision (a)(4) objection at the arbitration violated any principle justifying waiver here.

We turn, then, to the merits of the appeal. Applying de novo review (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 383), we address Saberin's arguments regarding the choice-of-law provision in the Inventions Agreement and the exterritorial application of FEHA and Labor Code section 432.7 and reject them.

B.  Choice-of-Law Provision

Saberin argues that the award must be vacated because the arbitrator "punted" the determination of whether the choice-of-law provision in the Inventions Agreement applied to Saberin's claims.  He further contends that the extraterritorial application of a statute "has no weight on whether California law applies to [this] case."  We disagree.

"[A] contractual choice of law provision that incorporates California law presumably incorporates *all* of California law—including California's presumption against extraterritorial application of its law." (*O'Connor v. Uber Technologies, Inc.* (2014) 58 F.Supp.3d 989, 1005 (*O'Connor*).) Accordingly, the choice-of-law provision "does not overcome the presumption against [extraterritorial] application of California law *absent an indication that such a presumption does not apply*." (*Ibid.*, italics added.)  The relevant question, therefore, is whether our Legislature intended to give the statute extraterritorial effect.  (*Id.*, at pp. 1005–1006; see also *Ward, supra*, 9 Cal.5th at p. 749.)

In answering that question, federal courts have declined to apply certain California statutes extraterritorially despite the parties' choice-of-law provision.  (E.g., *O'Connor, supra*, 58 F.Supp.3d at pp. 1005–1006 [concluding Labor Code sections 351 and 2802 did not apply extraterritorially to plaintiffs working in other states despite California choice-of-law provision in operating agreement]; *Cotter v. Lyft, Inc.* (2014) 60 F.Supp.3d 1059, 1062, 1064–1066 [concluding contractual California choice-of-law provision did not extend reach of wage and hours laws that do not apply extraterritorially to people performing work exclusively in other states].)

*1-800-Got Junk? LLC v. Superior Court* (2010) 189 Cal.App.4th 500 is inapposite.  In that case, the plaintiff sought to enforce a *Washington* choice-

11

of-law provision in a franchise agreement and alleged a violation of *Washington* state law.  (*Id.* at pp. 506–507.)  The Court of Appeal held that the provision was enforceable, as it was "reasonable for a franchisor to designate a single state's law to apply to all of its franchise agreements" and Washington was the closest United States jurisdiction to the defendant's headquarters in Vancouver, Canada.  (*Id.* at p. 514.)  The court had no occasion to consider *California's* presumption against extraterritorial application of its own law.

Setting aside the choice-of-law provision in the Inventions Agreement, Saberin argues that California law still applies to his claims pursuant to the general principle that a forum " ' "will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state." ' " (*Washington Mutual Bank, FA v. Superior Court* (2001) 24 Cal.4th 906, 919.)  But again, California law includes the presumption that its law is intended to apply only within its borders.  (*Ward*, *supra*, 9 Cal.5th at p. 749.)  The arbitrator did not err in ruling that, even if the choice-of-law provision in the Inventions Agreement applied to Saberin's claims, he still had to overcome this presumption.  We thus turn to the parties' arguments on extraterritoriality.

C. <u>Extraterritoriality</u>

Saberin argues that the arbitration award must be vacated because the arbitrator made an error of law in ruling that FEHA and the Labor Code could not be applied extraterritorially to Saberin's claims.  We disagree.

*Ward* provides the framework for our extraterritoriality analysis here.  In that case, flight crew members alleged that the airline's wage statements failed to provide all of the information required by Labor Code section 226.  (*Ward*, *supra*, 9 Cal.5th at p. 741.)  The Ninth Circuit asked the California Supreme Court to resolve whether Labor Code section 226 applied to

12

employees who reside in California but perform most of their work in airspace outside of the state. (*Ward*, at pp. 742–743.)

Resolving this issue, our high court held that it is "not sufficient to ask whether the relevant law was intended to operate extraterritorially or instead only intraterritorially." (*Ward*, *supra*, 9 Cal.5th at p. 752.) Instead, the "better question is what kinds of California connections will suffice to trigger the relevant provisions of California law." (*Ibid.*) Importantly, "the connections that suffice for purposes of one statute may not necessarily suffice for another." (*Ibid.*) As the court explained: "There is no single, all-purpose answer to the question of when state law will apply to an interstate employment relationship or set of transactions. As is true of statutory interpretation generally, each law must be considered on its own terms." (*Ibid.*)

Our high court therefore looked first to the plain language of Labor Code section 226 and determined that there was no text specifying its intended geographic scope. (*Ward*, *supra*, 9 Cal.5th at p. 752.) It then turned to the statute's "aims and its role in the surrounding statutory scheme," explaining that Labor Code section 226 is "part of a matrix of laws intended to ensure workers are correctly and adequately compensated for their work." (*Ward*, at pp. 752–753.) Its core purpose is " 'to ensure an employer "document[s] the basis of the employee compensation payments" to assist the employee in determining whether he or she has been compensated properly' " and appears to contemplate a "single" statement that provides an employee with "comprehensive" wage information. (*Ibid.*) Moreover, the legislative history of Labor Code section 226 shows "the measure was introduced at the behest of railroad employees who, receiving checks that showed only the net

13

amount they were paid, had no way to verify whether this amount was correct." (*Ward*, at p. 755.)

Based on these indicators of legislative intent, the California Supreme Court concluded that Labor Code section 226 applied to workers whose "principal place of work is in California." (*Ward*, *supra*, 9 Cal.5th at pp. 754, 761.) It explained that this includes employees who work "a majority of the time in California," as well as interstate transportation workers "whose work is not primarily performed in any single state, if the worker has his or her base of work operations in California." (*Id.* at pp. 760–761.) The high court reasoned that this test "supplies clarity and certainty for employers and employees, while also appropriately balancing the Legislature's weighty interest in the protection of California workers, including interstate transportation workers, with similarly weighty considerations of interstate comity and avoidance of conflicts of laws." (*Id.* at p. 756.)

In adopting this test, our high court rejected an alternative proposal to apply Labor Code section 226 whenever the " 'conduct which gives rise to liability . . . occurs in California.' " (*Ward*, *supra*, 9 Cal.5th at pp. 759–760.) It rejected that proposal as "hopelessly indeterminate when applied to [Labor Code] section 226 and similar wage and hour protections." (*Id.* at p. 760.) The court explained it was unclear whether liability under Labor Code section 226 was based on preparation of the statement, receipt of the statement, or the decision on the content in the statement, which could occur in three different states. (*Ward*, at p. 760.)

The central lesson from *Ward* is that California courts must engage in a statute-specific analysis to determine the geographic scope of a state statute. (*Ward*, *supra*, 9 Cal.5th at p. 752.) Saberin's petition to vacate the award acknowledged this, arguing that the arbitrator failed to conduct a

14

"specific" analysis of Section 12952 and Labor Code section 432.7, the "statutes relating to the use of a conviction without an arrest as the basis for denial of employment." But the parties' appellate briefing offers no analysis of the text, surrounding statutory scheme, or legislative history of either Section 12952 or Labor Code section 432.7 to determine their reach.

Instead, Alation contends we should employ the "principal place of work" test from *Ward*, while Saberin contends we should employ the "wrongful conduct" test from *Campbell*. Both cases, however, involved the extraterritoriality of different statutes. (*Ward*, *supra*, 9 Cal.5th at p. 741 [wage statement claims under Labor Code section 226]; *Campbell*, *supra*, 42 Cal.App.4th at p. 1854 [harassment claim under section 12940].) The parties' appellate briefing also discusses various unpublished federal decisions addressing other statutory provisions. (E.g., *Tetrault v. Capital Group Cos. Global* (C.D.Cal., Jan. 17, 2024, No. 2:23-cv-5144-WLH-E) 2024 U.S. Dist. LEXIS 9622, at pp. *7–*8 [FEHA national origin discrimination and retaliation statutes and Labor Code section 1102.5]; *English v. General Dynamics Mission Systems, Inc.* (C.D.Cal., May 8, 2019, No. EDCV 18-908 JGB (SHKx)) 2019 U.S. Dist. LEXIS 79025, at p. *2 [FEHA age, race, and gender discrimination, harassment, and wrongful termination statutes and Labor Code section 1102.5], affd. 808 Fed.Appx. 529; see also *Stovall v. Align Tech., Inc.* (N.D.Cal., Mar. 28, 2022, No. 5:18-cv-07540-EJD) 2022 U.S. Dist. LEXIS 55652, at p. *1 [section 12940]; *Sims v. WorldPac, Inc.* (N.D.Cal., Feb. 22, 2013, No. C 12-05275 JSW) 2013 U.S. Dist. LEXIS 24740, at p. *3 [same]; *Roger-Vasselin v. Marriott Internat., Inc.* (N.D.Cal., July 19, 2006, No. C04-4027 TEH) 2006 U.S. Dist. LEXIS 52729, at pp. *2, *16 [section 12960].) We do not consider these unpublished decisions persuasive and decline to adopt

any "test" without a specific analysis of the actual statutes at issue here, as instructed by *Ward*.

Labor Code section 432.7 regulates "inquiries by employers into an employee's arrest record." (*Housing Authority v. Van de Kamp* (1990) 223 Cal.App.3d 109, 115.) We see nothing in the language of the statute or surrounding statutory scheme that indicates its intended geographic scope, and the parties identify none. But the aims and purpose of the statute are more helpful. Labor Code section 432.7 was enacted in 1975 to expand existing law, which prohibited inquiry into arrest records on an initial employment application but permitted "questions regarding arrest records in the employment process following receipt of the initial application form." (Legis. Counsel's Dig., Assem. Bill No. 255 (1975–1976 Reg. Sess.) Summary Dig., p. 273.) The purpose of Labor Code section 432.7 is not only to protect California workers from " 'the adverse impact on employment opportunities of information concerning arrests where culpability cannot be proved' " (*Doe*, *supra*, 102 Cal.App.5th at p. 1018), which Saberin correctly notes serves an important public policy, but also to " 'prevent the misuse of criminal offender records information' " by employers (*Garcia-Brower*, *supra*, 55 Cal.App.5th at p. 972). Thus, the Legislature intended for the statute to cover both workers *and* employer conduct in the state. Accordingly, we conclude that in order for Labor Code section 432.7 to extend extraterritorially to non-California workers, the unlawful conduct at issue must have a sufficient connection to California. This appropriately balances the Legislature's intent with what Saberin describes as the "[c]onstitutional concerns underlying the presumption against extraterritoriality," namely interstate comity and avoidance of conflicts of law. (*Ward*, *supra*, 9 Cal.5th at p. 756.)

16

We reach the same conclusion in analyzing Section 12952, which regulates inquiries into the arrest record of an applicant for employment. Again, the plain language of the provision and surrounding scheme do not indicate its intended geographic scope. But when Section 12952 was enacted in 2017, the Legislature made findings and declarations indicating it sought to reduce "barriers to employment" for Californians with "an arrest or conviction record that can significantly undermine their efforts to obtain gainful employment" and to "prohibit[ ] private employers from inquiring into an applicant's record at the start of the hiring process." (Stats. 2017, ch. 789, §§ 1–2.) In so doing, the Legislature expressed its intent to reach both applicants and employer conduct in the state.

Applying Section 12952 and Labor Code section 432.7 in this case accomplishes neither intent.

Saberin and his arrest have no connection to California.[3] Saberin lived and worked remotely from Utah, not California. His "direct supervisor" worked remotely from the state of Washington, not California. Finally, Saberin was arrested in Florida, not California.

Saberin does not dispute this. Instead, he contends that Section 12952 and Labor Code section 432.7 should apply based solely on the connection between Alation's decision to terminate him and California. We agree that the purportedly unlawful conduct here was Alation's consideration of Saberin's arrest in deciding to terminate him. But the arbitrator correctly reasoned that Rose and Mousouris made that decision from Illinois, rather

---

[3] Thus, we need not decide whether Section 12952 or Labor Code section 432.7 applies to California residents working remotely for employers that have no offices in California and express no opinion as to that question.

17

than California, when they did so. And Rose, who worked remotely from Utah, initially discovered Saberin's arrest through a "public search."[4]

Saberin counters that Laber provided a sufficient California connection to the termination decision. We are not persuaded. Saberin contends Laber was "presumably" in California when that decision was made. But the arbitrator described such allegations as "overly general and non-specific." Saberin also contends that Laber's "input" showed she was involved in the termination decision. But again, the arbitrator found that too "tenuous" a thread to extend the California statutes extraterritorially. Implicit in this finding is that Laber's "input" was not substantive in the decision to terminate Saberin, and we defer to this factual finding. (*Moncharsh, supra*, 3 Cal.4th at p. 11.) Indeed, Laber's "input" could have simply consisted of providing Rose and Mousouris, the actual decision makers, with Saberin's employment history. Thus, it is readily apparent that an approach accepting any non-substantive input in a termination decision as sufficient to trigger extraterritoriality would be "hopelessly indeterminate" as applied to Section 12952 or Labor Code section 432.7. (*Ward, supra*, 9 Cal.5th at p. 760.) Likewise, Laber's communication of the termination decision to Saberin is not enough. The unlawful conduct under Section 12952 and Labor Code section 432.7 is the termination decision itself.

Saberin also argues that Mousouris provided a sufficient connection to California because Mousouris worked remotely from his home there, even though he was in Illinois at the time of the termination decision. Saberin contends it would " 'defeat the purpose and reach of the FEHA' " to allow an

---

[4] In his complaint, Saberin alleged that Laber told him that she discovered his arrest. But the declarations of Laber and Rose stated otherwise.

employer to shuttle California-based decisionmakers out of state to avoid extraterritorial application of California law. But the case Saberin cites to support its position involved an unlawful inquiry claim by *California residents* applying for employment. (*Fusco v. American Airlines* (N.D.Cal., Apr. 9, 2003, Nos. C 00-1439 PHJ, C 00-2597 PJH, C 00-3842 PJH) 2003 U.S. Dist. LEXIS 26483, at p. *5 (*Fusco*), affd. in part & revd. in part (9th Cir. 2005) 400 F.3d 702.) The federal court rejected the airline's argument that FEHA did not apply to the California residents because some of its application process occurred out of state, as the airline could then shuttle applicants out of state simply to avoid the law. (*Fusco*, at p. *10.) Here, it is undisputed that Saberin was not a California resident and worked remotely from Utah during the relevant time period. Moreover, we have no occasion to consider whether the "shuttling" of decisionmakers out of state to avoid Section 12952 or Labor Code section 432.7 would nonetheless raise sufficient connections to California for extraterritorial application of the statutes. There is nothing to suggest that this occurred here or that Alation's making of the termination decision in Illinois was anomalous in any way.[5] Where, as here, the employee has no connection to California, more is necessary to justify the application of Section 12952 and Labor Code section 432.7.

Saberin does not offer any persuasive authority to the contrary. *Campbell* is not on point because it involved a sexual harassment claim under section 12940, and the Court of Appeal concluded that the alleged harassment occurred in Washington and that any relationship with California was "slight" because "no one in [the defendant's California]

---

[5] At oral argument, Saberin conceded that he did not challenge the adequacy of the discovery permitted by the arbitrator.

headquarters participated in or ratified the conduct." (*Campbell*, *supra*, 42 Cal.App.4th at pp. 1854, 1858.)

Saberin's reliance on a FEHA regulation is also misplaced. That regulation defines the term "Employer" and states: "Employees located inside and outside of California are counted in determining whether employers are covered under the Act. However, employees located outside of California are not themselves covered by the protections of the Act if the allegedly unlawful conduct did not occur in California, or the allegedly unlawful conduct was not ratified by decision makers or participants in unlawful conduct located in California." (Cal. Code Regs., tit. 2, § 11008, subd. (e)(1)(C).) Our holding today does not conflict with this regulation. Contrary to Saberin's assertion, there is nothing about Laber's "input" to Rose and Mousouris or her communication of the decision to terminate Saberin that suggests Laber should be deemed a "participant[ ]" in the termination decision or that she "ratified" the decision in a manner that would support extraterritorial application of the statutes. (*Ibid.*) And as explained above, Mousouris' connection to California is insufficient to establish that the wrongful conduct occurred in California. (See, *ante*, at pp. 18–19.)

In sum, we conclude the arbitrator did not make an error of law in ruling that Section 12952 and Labor Code section 432.7 could not be applied extraterritorially to Saberin's claims.[6] The trial court did not err in denying Saberin's petition to vacate the arbitration award.

---

[6] Given this conclusion, we need not address Saberin's argument that the "remedy" for the arbitrator's purported error is to deem the parties' agreement to arbitrate unenforceable and return the action to state court.

### III. **DISPOSITION**

The order is affirmed. Alation is entitled to its costs on appeal.[7] (Cal. Rules of Court, rule 8.278(a)(1)–(2).)

CHOU, J.

WE CONCUR.

JACKSON, P. J.
BURNS, J.

---

[7] We deny Alation's request, made in its respondent's brief, for an award of its attorney fees incurred on appeal because Saberin's "continued pursuit of this matter is and was plainly frivolous." (See Gov. Code, § 12965, subd. (c)(6) [affording courts discretion to award reasonable attorney fees and costs to prevailing defendant upon finding "the action was frivolous, unreasonable, or groundless when brought, or the plaintiff continued to litigate after it clearly became so"].) The request is procedurally improper (see Cal. Rules of Court, rule 3.1702) and fails to persuade on the merits, as Saberin's extraterritoriality arguments maintained on appeal may not have prevailed but were not "frivolous" under section 12965 (see *Pollock v. Tri-Modal Distribution Services, Inc.* (2021) 11 Cal.5th 918, 949 [allowing prevailing defendant to collect fees on a potentially meritorious FEHA suit that ultimately did not succeed "would undercut the Legislature's intent to promote vigorous enforcement of our civil rights laws"]).

A174549/ *Saberin v. Alation, Inc.*

Trial Court:    Superior Court of the County of San Mateo

Trial Judge:    Nicole S. Healy

Counsel:

Lyon Law, Geoffrey C. Lyon for Plaintiff and Appellant.

O'Melveny & Myers, Eric Amdursky, Ryan Rutledge and Kristin MacDonnell for Defendant and Respondent.